May it please the court, my name is Jeanette Laffoon. I represent Amanda Zettelmier, who is seeking Social Security Disability Benefits. Ms. Zettelmier's primary impairment is juvenile onset diabetes. It manifests with retinopathy, obesity, and kidney dysfunction. Secondary to these health problems, she has lumbar pain, specifically the obesity. She also retains fluid due to the kidney impairment, and suffers from edema. Her legs swell up with the fluid, especially when she has to be on her feet for very long. The retinopathy has resulted in vision problems. She's completely blind in one eye. In the other eye, she had lost her vision, but it was regained with diabetic treatment and with laser surgeries. She still has some problems with that eye, though, with eye strain. Of the arguments that you've made, what is your strongest argument, that there's error? The agency's own doctor, Dr. Heilbrunn, who was hired specifically to determine what her limitations are, did his job, prepared a report. That's in the transcript at pages 502 to 508. When those specific limitations were read to the vocational expert at the hearing, the V.E. testified that that would preclude all work. So I believe our strongest argument is that if you look at the medical and vocational evidence that was submitted by the agency's own experts, there should have been a finding of disability. So the ALJ said about Dr. Heilbrunn's evidence, among other things, that it was internally inconsistent because his narrative indicated that Zellmeyer had no difficulty with maneuvering within the examination room and was able to accomplish all ranges of motion, et cetera, and onward, and then also noted that it was inconsistent with other evidence in the record. So why is that not sufficient to support the ALJ's determination? Well, for one thing, that's not completely accurate. If you look at Dr. Heilbrunn's report, there was evidence of lumbar pain on examination. The specific problems that the administrative law judge found with that report was that there was no evidence of radiculopathy. There was lumbar impairment, it just wasn't radiating down her legs. But that was from her report, right? And the ALJ made an adverse credibility determination. He did, but she was examined by Dr. Heilbrunn, and he noted it on exam. This isn't a case where Amanda went in there and said, oh, my back hurts, and Dr. Heilbrunn just accepted that at face value. He examined her. There's also evidence of back pain throughout the record. Is there anything that when I looked at the back pain records, it was all her report, she went in for back pain, they did tests, and they didn't find anything. So it didn't seem to rise to the medically determinable impairment level, because there was never any physical problem that was detected in the exams. Yes, and I do agree there was nothing on x-ray establishing that there was something mechanically wrong with the bones in her back. Part of her impairment, however, is obesity, which is connected with her diabetes. Well, your client definitely has a lot of physical problems. In fact, if you go for all of her doctor's appointments, it takes about 10 pages to list all of them, as far as that goes. And so, but the ALJ is tasked with going through all of that and doesn't have to believe everyone, doesn't have to find, you know, can believe part of one and another and put all this together. And so, you know, just because you can point to the record in one spot that there's evidence of something, that doesn't necessarily solve the problem. It does. One problem with the judge's decision, however, is he did not go through the record and piece it all together. What he did was he relied on the DDS evaluation. He preferred that conclusion over that of the examining doctor, Dr. Heilbrunn. And the problem with that is the DDS evaluation was done six months, was prepared six months prior to Dr. Heilbrunn's examination. So that doctor, who was a non-examining doctor, didn't even have the benefit of Dr. Heilbrunn's report and observations. The administrative law judge. Well, those are all arguments that you make in front of an ALJ. But once an ALJ, you know, once a lower court has ruled, then we have to go by our standards of review. And so you don't get to completely re-argue the case from scratch. So dealing with our standards of review, an ALJ is allowed to discount certain things, put more weight on other things as long as they, you know. So what did the ALJ do wrong other than not agree with you? Well, as long as they make sense and his conclusions are based on the medical evidence, what the ALJ did wrong was he said, I'm going to accept the limitations in the DDS evaluation instead of the limitations that were identified by the examining doctor. And that's where the problem is. Well, he can do that, right, as long as he gives specific and legitimate reasons. And here he gave those reasons, which was the report was internally inconsistent. Well, first of all, okay, Dr. Heilbrunn was an examining doctor. He was a special examining doctor in that he was hired by the Social Security Administration specifically to evaluate this type of case. The evidence that the ALJ preferred was a non-examining doctor, the DDS doctor, that took a look at the medical evidence in the file at the time he reviewed it. That was six months prior to Dr. Heilbrunn's evaluation. He didn't have the benefit of all the evidence that was in the record to review it. So it's the preference of a non-examining doctor's opinion of limitations over that of an examining doctor's limitations. There are no treating physician opinion limitations. But you can do that if you give reasons. You don't have to. I mean, an examining doctor could be an absolute quack. And it could be, you know, I mean, an examining doctor could say that the person is paralyzed, you know, that they're a quadriplegic, and the person walks into the office. And are you still saying that the ALJ would have to accept what the examining doctor said because they were the examining doctor? If the ALJ had any evidence that this doctor was a quack, no, he wouldn't. All right, I'm giving you the extreme. But here the ALJ gave some reasons why the ALJ didn't give the weight to the examining doctor that you wanted. And if those reasons are sufficient, that, you know, like it or not, that's the standard of review. Our position is that they were not legally sufficient. The reasons that he provided were not legally sufficient. The judge is not a doctor. The doctor had the patient in front of him, examined her, and drew conclusions from his entire examination. The administrative law judge reinterpreted his findings in order to draw his own conclusions, but the administrative law judge is not a doctor. He does have the authority. Well, but if in every case the reason that the judge is wrong is that they're not a doctor, then a judge couldn't decide a case, and that's just simply not the law. You're going to have a judge deciding the case every time. No, the judge is going to decide the case, but the judge's decision has to be based on the medical evidence. He can't discount the medical evidence because he, the judge, would draw different conclusions from the examining doctor than the conclusions that the examining doctor drew himself. Can I turn your attention to a different subject? With regards to her mental limitations, the ALJ found that they were non-severe, as I recall, correct? That is correct. Do you think that the ALJ has to include that non-severe finding or the non-severe mental limitation in the RFC? Yes, I do. And do you think that the ALJ has to include it in the hypothetical to the vocational expert? In order to come to a reasoned decision, I believe he does. How non-severe does it have to be before the ALJ can discount the limitation? If there is no medical evidence of the impairment, he could. If a doctor examined her and said, well, she's got depression, but it doesn't cause any limitations, that might be a situation. Well, there was evidence that there was depression, but that it was controlled by medication. So is that then make it, you know, if medication cures the problem, then does it have to be included? If the medication cures the problem, then it doesn't have to be included. If the medication renders the mental impairments only moderate, which is what happened in this case, then those moderate limitations need to be considered in order to come to a correct decision. And it's possible in this case that the moderate limitations from the depression would not have resulted in anything vocationally significant, but we don't know that because they were not presented to the vocational expert at the hearing. All right. Unless there's further questions by the panel, we've gone over your time, so that's all right. That went fast, huh? Funny how time flies when you're having fun. Thank you. Good morning. Good morning, Your Honors. May it please the Court, I'm David Burdett, representing the Commissioner of Social Security, Michael Astru, the appellee. I would like to- There was an interesting article on your boss in one of the papers, apparently he has a nom de plume or something. The man is a poet. Is a poet or something. He's a Renaissance fan, kind of. I thought that was pretty cool. There's this sort of- Did you not know? No. No, none of us knew. None of us knew that Michael Jester was actually Michael Astru in disguise. And, yeah, that- Well, I mean, I only see it on these- I mean, I don't have any, but that was an interesting article to read. Well, I won't take any more of your time, but I thought that was a surprise. Yeah, it was quite something. Could you address for me, my concern here is Dr. Wheeler, who put in her report that there were- that Ms. Elmire had moderate limitations in the ability to exercise judgment and make decisions and moderate limitations in the ability to respond appropriately and tolerate the pressures and expectations of a normal work setting. The ALJ did not include them in his RFC or in the hypothetical. Is this something that we would have to send it back, or is that possibly a harmless error? Can you address that for me? Actually, Judge Ikuda, I don't even think it's an error, because I think the answer to that is the contrary conclusion of Dr. Price, who was the other psychiatrist who examined her in the record at 262 to 267, and he said that with treatment she would not be limited by her mental condition, that she could accept instructions from superiors and interact with coworkers in the public. So there's an inconsistency in the record, but the ALJ did not expressly address that. Is the ALJ freed from that requirement? If he did not address that, I think that's a harmless error. I think that's a harmless error, because the definition of harmless error is one which would not alter the case, and I think that when you have a medical doctor who examines her and says, would not be limited by her mental condition. Well, how can we decide that, because there's two competing medical decisions in the record, and the ALJ, who is empowered to resolve that, didn't do so, or at least didn't do so expressly. Well, I think he did so by failing to include it in the residual functional capacity. Well, the ALJ, though, says that he considered all of the evidence, but never specifically mentions Dr. Wheeler, is that correct? That's right. It does talk about Dr. Price. I believe he did. And Dr. Wheeler said, does Dr. Price assume Dr. Wheeler? Yeah. I mean, I would say Dr. Price gives a more favorable view, a little bit more favorable than, or does even. Yes, he does. He does. He certainly does. And my contention is that the reference to the contrary opinion indicates that that is what the ALJ would have relied on in any event. And the reference to, I considered all the evidence, and I rely on this opinion, is enough to indicate that. Do we have any case that would support that interpretation that you could point me to? I don't have a pinpoint site, but I think that Valentine has a similar phenomenon. Where they didn't, because Valentine was inconsistent information, but was there one? Right. In Valentine they didn't, would you say they, did they address the question when the ALJ didn't reference one side? I think it was medical doctors, it was not a psych exam, but I think it was a physical exam that was not specific, not all physical exams were specifically addressed by the ALJ in that case, if I'm recalling it correctly. And with regard to the first question. So let me ask you. So basically what you're saying is that there's evidence in the record, we know that the ALJ had that evidence before him or her, and then the ALJ makes a ruling even though he or she might not specifically refer to the specific evidence, by virtue of the fact that the ALJ has made the ruling. Implicit in that is that they have considered the evidence, and that should be sufficient. That's my position in this case. Okay. What was the best evidence for Ms. Settlemyer in terms of, you know, assuming all, that what would be the strongest evidence that was in the record between Dr. Wheeler and Dr. Price in her favor of, because I know that I think both of them said it was controlled by medication, right? But what's the, what, you know, if you consider what would be her worst condition in the record of that evidence? Yes. I mean, it's not, I know there's not a doctor that says this woman is so impaired mentally that she can't do anything. But Dr., is Dr. Wheeler a better evidence for her than Dr. Price or who? Well, Dr., let me make her case as best as I can. I think Dr. Wheeler is a better doctor for her than Dr. Price, yes. And Dr. Wheeler says it's moderate but controlled by medication? Dr. Wheeler does say that she has moderate limitations. Right. Dr. Price says with treatment will not be limited by her mental condition. And that would be with treatments with medication. Correct. All right. I would just like to point out with regard to the issue of Dr. Heilbrunn and the physical limitations, which I actually think are possibly more of a contentious issue in this case than the mentals. The way the issue was framed by appellant in the briefing was the allegation that we are arguing that the ALJ need not consider Dr. Heilbrunn. We're not saying that, but we're saying that the ALJ is able to weigh the competing claims of different physicians. Whether or not Dr. Heilbrunn was the social security examiner, yes, the ALJ had to consider him. But the ALJ didn't have to adopt his opinion. That's the position that we're taking up. Contrary physicians' evidence in the record, the ALJ makes a decision, and that is what the ALJs do in every one of these social security cases. In every one that get this far, at least, that come into court where there's a controversy, there is competing medical evidence or there's competing testimonial evidence, and the ALJ weighs that decision or weighs that evidence on either side and makes a decision. And if the ALJ is not allowed to do that, then there is no sense in having ALJ review, and we might as well go directly to the federal court with all these 400,000 cases every year. I would like to point out that- The law doesn't say that. I took that up with counsel. And there was, I think I heard counsel say, that there was no other examining physician besides Dr. Heilbrunn on the case. That is not correct. There are many, at least 10 examinations- I didn't hear her say that. I think she focused saying that he was an examining physician. Oh, I don't know. I didn't quite hear it that way. We won't make it a point of contention, then, because there are many other examinations from Dr. Bimini, her treating physician, who examined her from 2004 to 2007 and found relatively light physical impairments. If there are no other questions, then I would humbly request that the court affirm the decision. There don't appear to be any other questions, so the matter will stand submitted. Thank you both for your argument. The remaining matters on calendar. Susan M. McDermott v. Michael Astrew is submitted on the briefs. Auburn Ace Holding, Plan B v. Auburn Ace Holding, submitted on the briefs. HIMC Corporation v. Prem Ramchandani, submitted on the briefs. And Lauren Taylor v. 1-800-GOT-JUNK, submitted on the briefs. Court is now in recess for the week.
judges: Benitez, Callahan, Ikuta